**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

**HECTOR LUIS MARTINEZ,**
                         :
                         :
           **Plaintiff,**       :        **REPORT AND**
                         :        <u>**RECOMMENDATION**</u>
     **-against-**              :
                         :<u>     </u>**06 Civ. 6219 (KMK)(LMS)**
**MICHAEL J. ASTRUE,**           :
**Commissioner of Social Security,**   :
                         :
          **Defendant.**        :
------------------------------------------------------------X

**TO:   THE HONORABLE KENNETH M. KARAS, U.S.D.J.**

      Hector Luis Martinez brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3)

seeking judicial review of the final decision of the Commissioner of Social Security (the

"Commissioner"), finding that he was not entitled to supplemental security income under the

Social Security Act (the "Act").  Currently pending before the Court are the Plaintiff's motion for

judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure,

Docket # 12, and the Commissioner's motion for a reversal of his decision and a remand to the

Social Security Administration for further administrative proceedings pursuant to the fourth

sentence of 42 U.S.C. § 405(g).  Docket # 16.  In response to the Commissioner's motion,

Plaintiff agrees that the case must be remanded, but claims that such remand should be solely for

the purpose of calculating benefits.  <u>See</u> Docket # 20.  For the reasons that follow, I conclude,

and respectfully recommend that Your Honor should conclude, that the Commissioner's

determination should be reversed and remanded for further administrative proceedings pursuant

to sentence four of 42 U.S.C. § 405(g).

# I.    BACKGROUND

## A.    Procedural History

On April 9, 2004, Plaintiff filed his application for supplemental security income ("SSI"), claiming that his disability began on May 1, 2002. Administrative Record ("AR") 57-60. His claimed disability included hepatitis C and mental illness. Id. 67. Plaintiff's application was denied on September 23, 2004, id. 27-30, and he thereafter requested a hearing by an Administrative Law Judge ("ALJ"). Id. 31-33. Following the September 19, 2005, hearing, the ALJ issued a decision, on March 29, 2006, finding that Plaintiff was not disabled within the meaning of the Act and was not entitled to SSI. Id. 15-25. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Id. 11, 146-50. On June 29, 2006, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. Id. 7-9.

On August 16, 2006, Plaintiff commenced the instant action in this Court (Docket # 2), alleging that the ALJ wrongly denied him SSI. After filing an Answer (Docket # 9), Plaintiff filed a motion for judgment on the pleadings on several grounds, including the ALJ's failure to give appropriate weight to the opinion of Plaintiff's treating physician and the lack of substantial evidence in support of the ALJ's ruling with respect to Plaintiff's ability to meet the mental demands of work. Docket # 12. The Commissioner separately moved for a remand for further administrative proceedings on the ground that the ALJ applied the incorrect legal standard in weighing the medical opinion of the consultative examiner. Docket # 16.

**B.** **Medical Evidence**

Dr. Isaac Torruella wrote a letter dated November 24, 2003, noting that Plaintiff began treatment at New Beginnings Community Counseling Center ("New Beginnings") on February 11, 2003.  AR 111.  Dr. Torruella indicated that Plaintiff was receiving medication once a month and psychotherapy twice a week.  Id.  The staff psychiatrist evaluated Plaintiff on November 24, 2003, and diagnosed Plaintiff with major depression, for which the medications Wellbutrin and Elavil were prescribed.  Id.

On March 26, 2004, Felix Velazquez, a clinical social worker at New Beginnings, wrote a letter in which he indicated that Plaintiff suffered from severe depression with psychotic feautres. Id. 110.  He stated that Plaintiff was "in dire need of public assistance [because] he is severely and persistently mentally ill and is unable to work at present."  Id.  Mr. Velazquez reiterated Plaintiff's diagnosis of chronic recurrent depression with psychosis in a note dated May, 19, 2004.  Id. 108.  He also noted that Plaintiff was taking the medications Wellbutrin and Elavil.  Id.

On May 12, 2004, Confesora Castoire, a case manager, wrote a letter noting that Plaintiff was a resident of Unique People Services Supported Housing Program for the Homeless & Mentally Ill.  Id. 109.  She explained that Unique People Services was a community residential agency aimed at helping individuals with psychiatric disabilities.  Id.  Ms. Castoire stated that Plaintiff was being treated for chronic recurrent depression with psychosis.  Id.  She said that at that time, Plaintiff was being visited on a weekly basis since his level of functioning was unstable due to his depression and reported suicidal ideation.  Id.  She noted that he was taking the psychotropic medications Wellbutrin and Elavil.  Id.

On May 20, 2004, a consultative physical examination was conducted by Dr. E. B.

Balinberg.  Id. 112-15.  Dr. Balinberg noted that Plaintiff had been diagnosed with hepatitis C six years ago and was in treatment for chronic recurrent depression with psychosis.  Id. 112.  He stated that Plaintiff smoked two packs of cigarettes a day, drank alcohol, and did not use illicit drugs other than smoking marijuana occasionally.  Id.  Dr. Balinberg reported that Plaintiff spent his days at home and received help from a friend with shopping and household chores.  Id.  He noted that Plaintiff had walked to the examination.  Id.  Dr. Balinberg diagnosed Plaintiff with hepatomegaly and possibly chronic liver disease, with a history of hepatitis C.  Id. 113.  With respect to Plaintiff's functional ability to do work-related activities, Dr. Balinberg opined, "He has an enlarged liver.  He was diagnosed to have hepatitis C.  I estimated that due to fatigue, he has some restriction in his ability to do heavy physical activities.  His main problem is a psychiatric condition. . . ."  Id. 114.

A report provided by Dr. David Molina and Mr. Velazquez from New Beginnings after a June 1, 2004, examination of Plaintiff indicates a diagnosis of major depression with psychotic features.  Id. 118.  According to the report, Plaintiff was first seen on February 11, 2003, and was receiving medication therapy once a month and verbal therapy once a week.  Id. 120.  He was taking Wellbutrin and Elavil, but his response to those medications was poor.  Id.  His current symptoms were listed as "Depressed, constricted anxiouse [sic] sleep disturbance, insomnia[,] isolation, anger, poor impulse control – agressive behavioure [sic]."  Id. 118.  As of his most recent status examination, he was oriented to person, place, and time and was friendly and cooperative.  Id. 120.  He exhibited pressured, fast speech that was over-inclusive, tangential, and defensive, with angry content.  Id.  His mood and affect were depressed, constricted, distressed, and anxious.  Id.  Plaintiff was alert, edgy, and of normal intelligence.  Id. 121.  With respect to

4

attention and concentration, he had racing thoughts and was preoccupied, but he had a normal range of knowledge, normal memory, and an ability to perform calculations within a normal range.  Id.  Nonetheless, he exhibited poor insight, poor judgment, poor impulse control, and had a history of volatile behavior.  Id.  Plaintiff's current functional assessment included reports of pacing at night, sleeping during the day, and isolating himself from others.  Id.

With respect to Plaintiff's ability to function in a work setting, the report states, "[Patient] reports finding jobs, but not able to hold on to them. [Patient] is not emotionally stable, irritable [and] volatile with a tendency to isolate when depressed. [Patient] is not able to assimilate criticism. [Patient] is apparently unable to work."  Id.  The report found that Plaintiff suffered from suicidal ideations and that Plaintiff's understanding and memory were limited because he is "chronically and persistently mentally ill."  Id. 122.  It also noted that his sustained concentration and persistence were limited since he reported "low tolerance for criticism, poor impulse control, [and] defensiveness."  Id.  The report stated that Plaintiff was inconsistent in keeping appointments, forgot appointments, and isolated for weeks at a time.  Id. 123.  It noted, "[Patient] suffers from severe depression[,] isolates – has interrupted sleep patterns – irritable, defensive." Id.

On June 3, 2004, a consultative psychiatric examination was conducted by Dr. Eugene Allen.  Id. 116-17.  Dr. Allen noted that Plaintiff came alone by bus to the appointment.  Id. 116. He reported that Plaintiff had been in therapy for nearly two years but had been treated before and was hospitalized twice in 1994 in Puerto Rico, each time for an overdose.  Id.  Plaintiff was seeing a psychiatrist once a month, a therapist weekly, and a social worker, who went to his home to check that he was taking his medications.  Id.  Plaintiff was taking Elavil and

Wellbutrin, which helped him "somewhat." Id. Plaintiff had no history of alcohol abuse and was drug-free for six years, although he had used heroin for three years, had used crack cocaine and marijuana for 25 years, and was in a drug program in the past. Id. Plaintiff had last worked eight months prior as an usher for four months, however, he stopped because of the side effects of his medications. Id. He was not currently working because he was depressed. Id.

With respect to Plaintiff's mental status, Dr. Allen stated that "[g]ood relatedness and eye contact were established. Speech was relevant and coherent." Id. Dr. Allen noted that Plaintiff "heard voices two days ago calling him," and "[f]our days ago he saw the knobs on his dresser moving." Id. Plaintiff reported that "[p]eople talk about him behind his back and follow him." Id. Plaintiff reported that he had had suicidal thoughts three weeks prior, which he had relayed to his doctor, and that he had had homicidal thoughts in the past which he had relayed to his doctor. Id. Dr. Allen noted that Plaintiff was angry at his grandfather, who he claims molested his son. Id. Plaintiff's mood and affect were normal. Id.

Dr. Allen stated that while Plaintiff did not remember his name, he remembered two out of three objects after several minutes. Id. Dr. Allen noted that Plaintiff "could do four numbers forward but not backward. He could do three numbers forward and backward. He could not do serial sevens. With his fingers, he could do serial threes. He did not know the number of dimes in a dollar, but he knew the number of quarters in a dollar. He did not know the name of the President and the Mayor." Id. 116-17. Dr. Allen stated that Plaintiff's insight was "nil," but his judgment was "good." Id. 117. Plaintiff was oriented in three spheres. Id.

Dr. Allen noted that Plaintiff lived with his sister, his hobby was to clean, and he liked to plant things. Id. Dr. Allen further noted, "An average day is doing some house chores. He

knows how to cook and shop, and he can handle small amounts of money. He socializes with his sister, his son and his mother." Id. Dr. Allen concluded, "In my opinion, the claimant has a fair ability to understand, carry out and remember instructions and a fair ability to respond appropriately to supervision, co-workers and work pressures in a work setting in a sheltered type environment." Id. Dr. Allen diagnosed Plaintiff with depressive order, not otherwise specified, and poly-substance dependency in remission. Id.

On September 16, 2004, non-examining State agency psychological consultant, Jane Stafford, contacted Plaintiff's treating physician, Dr. Molina, and prepared a "Report of Contact." Id. 102. During their telephone conversation, Dr. Molina indicated that Plaintiff had psychotic features with intermittent paranoia. Id. However, Dr. Molina had not prescribed an anti-psychotic medication since he hoped that through treatment of Plaintiff's depression, the psychotic features would resolve themselves. Id. With respect to Plaintiff's depression, Dr. Molina reported that Plaintiff became "overwhelmed at times and when he does it takes him much longer to complete daily activities, such as running an errand." Id. Dr. Molina stated that he was not aware, and had no suspicions, of substance abuse by Plaintiff, but he had not screened Plaintiff for drugs. Id.

That same day, based on her review of the evidence of record, Dr. Stafford issued a report concerning Plaintiff's ability to work. Id. 124-41. In rating Plaintiff's functional limitations under the "B" criteria of the Listing of Impairments (found in 20 C.F.R., Part 404, Subpart P, Appendix 1), she found that Plaintiff suffered a mild limitation in performing activities of daily living, a moderate limitation in maintaining social functioning, and a moderate limitation in maintaining concentration, persistence or pace. Id. 134. However, there was insufficient

evidence regarding repeated episodes of deterioration of an extended duration.  Id.  Based on the record evidence, Dr. Stafford found that Plaintiff was "able to understand, carry out and remember simple instructions" and had "the judgement to make simple, work-related decisions (e.g., has sought treatment)."  Id. 136.  Dr. Stafford found that while Plaintiff reported to Dr. Molina and Mr. Velazquez that he had a low tolerance for criticism, there was nothing in the medical evidence of record to indicate that Plaintiff could not get along with supervisors or co-workers.  Id.  She noted that Plaintiff had a job as an usher for four months and reported that he left the job due to side effects from his medication, not an inability to get along with others.  Id.  Dr. Stafford concluded that while Plaintiff had some impairments, "it does not appear that they are severe enough to prevent [him] from being able to perform unskilled, entry-level work."  Id.

In assessing Plaintiff's mental residual functional capacity, with respect to understanding and memory, the only limitation noted by Dr. Stafford was a moderate limitation in Plaintiff's ability to understand and remember detailed instructions.  Id. 138.  With respect to sustained concentration and persistence, Dr. Stafford found that Plaintiff was moderately limited as regards the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to sustain an ordinary routine without special supervision; the ability to make simple work-related decisions; and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  Id. 138-39.  In terms of social interaction, Dr. Stafford found that Plaintiff was moderately limited in his ability to accept instructions and respond appropriately to criticism from

supervisors.  Id. 139.  Finally, with respect to adaptation, Dr. Stafford found that Plaintiff was moderately limited in the ability to respond appropriately to changes in the work setting.  Id.

On September 16, 2005, Irene Crosby, Plaintiff's case manager at Unique People Services, reported that Plaintiff had been admitted into the Supported Housing family program on July 18, 2003, and resided with his 9-year-old son.  Id. 145.  She stated that Plaintiff had been under psychiatric care since his admission to the program.  Id.  She reported that Plaintiff was taking the psychotropic medications Lexapro, Pegintron, and Ribavirin.[1]  Id.  Ms. Crosby noted that Plaintiff received case management services weekly "due to his poor level of functioning, which has impeded his ability to function independently at this time."  Id.

**Other Evidence**

At the time of the hearing, Plaintiff was 35 years old and lived in an apartment with his 9-year-old son.  Id. 159, 173, 174.  Plaintiff had a 10th grade education.  Id. 175.  Plaintiff testified that he suffered from chronic depression, hepatitis C, and HIV.  Id. 155.  He said that he stayed home most of the time because of his depression and that the medication he took sometimes made him paranoid.  Id. 156.  Plaintiff testified that he walked his dog sometimes and watched TV.  Id.  He said that he was going to start his treatment for hepatitis C the next day.  Id. 157.  That treatment was expected to last for six months to a year.  Id. 158.  Plaintiff had not yet received treatment for HIV.  Id.

Plaintiff testified that he had last worked about a year prior to the hearing as an usher at a movie theater.  Id. 159.  He was an usher for about four months but had to stop due to the side effects of his medication.  Id. 159, 171.  He worked at the movie theater about twenty-four or

---

[1]Peg-Intron and Ribavirin are medications for the treatment of hepatitis C.  Id. 103-04.

twenty-five hours a week.  Id. 160.  The job involved walking around but no heavy lifting.  Id.

Prior to that, Plaintiff worked as a laborer in construction for almost a year.  Id.  In that job,

Plaintiff would lift between 50 and 100 pounds, but nothing heavier than that because of his

medication.  Id. 161.  Prior to that, he worked for six months in the laundry department of a

nursing home.  Id.  He was on his feet all day folding clothes, but that job did not involve any

heavy lifting.  Id. 161-62.  Prior to that, Plaintiff worked for seven months in a bar sweeping,

mopping, and cleaning tables.  Id. 162-63.  That job also involved being on his feet, but no heavy

lifting.  Id.

　　　Plaintiff testified that he suffered side effects from his depression medications.  Id. 169.

He said that sometimes he was paranoid and did not want to go outside, and if he did not have

anything to do outside, then he would just stay home.  Id.  He said that his medications would

make him drowsy, so that he would not watch TV or read a book.  Id.  Sometimes he would not

want to be around anybody.  Id.  Plaintiff testified that these side effects were from the

Wellbutrin and Elavil and that is why his doctors switched him to Lexapro.  Id. 165-66, 170.

　　　A vocational expert testified at the hearing.  The vocational expert said that Plaintiff's

past work as a movie usher was light duty with an SVP[2] of 2.  Id. 176.  The code in the

Dictionary of Occupational Titles ("DOT") was 344.667-010.  Id.  Plaintiff's prior job as a

construction laborer also had an SVP of 2 and was exertionally heavy.  Id.  Its DOT code was

281.687-014.  Id.  Plaintiff's job as a laundry worker had an SVP of 2, was exertionally medium,

---

[2]"SVP" stands for "specific vocational preparation," which is defined as "the amount of
lapsed time required by a typical worker to learn the techniques, acquire the information, and
develop the facility needed for average performance in a specific job-worker situation."
Dictionary of Occupational Titles, Appendix C.  An SVP of 2 means "[a]nything beyond short
demonstration up to and including 1 month."  Id.

and had a DOT code of 361.684-014.  Id.  Lastly, Plaintiff's job as a cleaner was exertionally light, with an SVP of 2, and a DOT code of 323.687-014.  Id. 176-77.

The ALJ then asked the vocational expert to assume a person who was 35 years old, with a 10th-grade education and Plaintiff's work history, and who could work without any exertional, postural, or environmental limitation.  Id. 177.  The ALJ asked the vocational expert to assume that this person "could understand and remember simple instructions, could concentrate for two hours on simple tasks, could interact appropriately with coworkers and supervisors, and could adapt to changes in the work setting."  Id.  The ALJ then asked whether such a person could perform Plaintiff's past work, and the vocational expert responded that such a person could perform all of Plaintiff's past jobs.  Id.  In the second hypothetical, the ALJ asked the vocational expert to assume a person of the same age, with the same education and work history, and without any exertional, postural, or environmental limitations, but who had "marked or serious limitation in the ability to maintain concentration, persistence, or pace."  Id.  The vocational expert testified that such a person could not perform Plaintiff's past work, nor could such a person perform other jobs in the national or regional economy.  Id. 177-78.

## II.   APPLICABLE LEGAL PRINCIPLES

### A.    Standard of Review

The scope of review in an appeal from a social security disability determination involves two levels of inquiry.  First, the court must review the Commissioner's decision to determine whether the Commissioner applied the correct legal standard when determining that the plaintiff was not disabled.  Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999).  Failure to apply the correct legal standard is grounds for reversal of the ruling.  Townley v. Heckler, 748 F.2d 109, 112 (2d

Cir. 1984). Second, the court must decide whether the Commissioner's decision was supported by substantial evidence. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 106 (internal quotation marks and citations omitted). When determining whether substantial evidence supports the Commissioner's decision, it is important that the court "carefully consider[] the whole record, examining evidence from both sides." Tejada, 167 F.3d at 774 (citing Quinones v. Chater, 117 F.3d 29, 33 (2d Cir. 1997)). "It is not the function of a reviewing court to decide de novo whether a claimant was disabled." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (citation omitted). If the "decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its own] judgment for that of the Commissioner." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002). Moreover, the ALJ "has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings, regardless of whether the claimant is represented by counsel." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted).

### B. Determining Disability

In the context of SSI, the Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). In evaluating a disability claim, regulations issued pursuant to the Act set forth a five-step process that the Commissioner must follow. See 20 C.F.R. § 416.920(a)(4).

First, the Commissioner will consider whether the claimant is working in "substantial

gainful activity." <u>Id.</u> at § 416.920(a)(4)(i),(b). If the claimant is engaged in "substantial gainful activity," then the Commissioner will find that the claimant is not disabled. <u>Id.</u> Second, the Commissioner considers the medical severity of the claimant's impairments. <u>Id.</u> at § 416.920(a)(4)(ii). The claimant's impairment will not be deemed severe "[i]f [he or she] do[es] not have any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities." <u>Id.</u> at § 416.920(c). Third, if it is found that the claimant's impairments are severe, the Commissioner will determine if the claimant has an impairment that meets or equals one of the impairments presumed severe enough to render one disabled, listed in Appendix 1 to Part 404, Subpart P of the Social Security Regulations. <u>See id.</u> at § 416.920(a)(4)(iii),(d). If the claimant's impairments are not on the list, the Commissioner considers all the relevant medical and other evidence and decides the claimant's residual functional capacity. <u>See id.</u> at § 416.920(e). Then, the Commissioner proceeds to the fourth step to determine whether the claimant can do his or her past relevant work. <u>See id.</u> at § 416.920(a)(4)(iv),(e)-(f). Finally, if it is found that the claimant cannot do his or her past relevant work, the Commissioner will consider the claimant's residual functional capacity, age, education, and work experience to see if he or she can make an adjustment to other work. <u>See id.</u> at § 416.920(a)(4)(v),(g).

The claimant bears the burden of proof on the first four steps of this analysis. <u>DeChirico v. Callahan</u>, 134 F.3d 1177, 1180 (2d Cir. 1998) (citation omitted). If the ALJ concludes at an early step of the analysis that the claimant is not disabled, he or she need not proceed with the remaining steps. <u>Williams v. Apfel</u>, 204 F.3d 48, 49 (2d Cir. 2000). If the fifth step is necessary, the burden shifts to the Commissioner to show that the claimant is capable of other work.

DeChirico, 134 F.3d at 1180 (citation omitted).

## III.   DISCUSSION

As required, in deciding Plaintiff's case, the ALJ applied the five-step sequential analysis set forth in the regulations.  First, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since May 1, 2002.  AR 19.  Second, he found that while Plaintiff claimed disability based on chronic depression, hepatitis C, and HIV positive status, there was "nothing to substantiate that either his hepatitis or his HIV+ status significantly affect[ed] his ability to perform basic work-related functions."  Id.  However, his emotional impairment was "severe" within the meaning of the Act.  Id.  Third, the ALJ found that Plaintiff's depression did not meet or equal in severity any category of the Listing of Impairments found in Appendix 1 to Subpart P of Part 404 of the Social Security Regulations.  Id.  Therefore, he went on to determine Plaintiff's residual functional capacity and found that there was "a substantial disparity between [Plaintiff's] allegations of functional limitations and the objective medical signs and findings of record."  Id. The ALJ concluded that "although [Plaintiff] no doubt suffers from some functional limitations due to his emotional impairment, [Plaintiff's] allegation that his impairments are severe enough to totally compromise his ability to perform all work activity is neither reasonably consistent with the medical signs and findings of record nor sufficiently credible as 'additive' evidence to support a finding of disability."  Id. 19-20.

The ALJ determined that although Plaintiff had some limitations due to his emotional impairment, he had no exertional, postural, or environmental limitations.  Id. 20, 25.  He could understand, remember, and carry out simple instructions and was able to make simple work-related decisions.  Id.  He was able to interact appropriately with co-workers and supervisors and

could adapt to changes in the work setting.  Id.  Based on this assessment of Plaintiff's residual

functional capacity, the ALJ questioned the vocational expert at the hearing as to whether

someone with Plaintiff's vocational profile and residual functional capacity could perform any of

Plaintiff's past relevant work, including laundry worker, cleaner, and movie theater usher/ticket

taker.  Id. 20.  Thus, at the fourth step of the analysis, the ALJ determined that Plaintiff had the

residual functional capacity to perform his past relevant work as a laundry worker, cleaner, and

movie theater usher/ticket taker. Id. 20, 21-22.  Therefore, the ALJ concluded that Plaintiff was

not disabled and not entitled to SSI.  Id.

Plaintiff's initial moving papers set forth four challenges to the Commissioner's decision:

1) the ALJ did not adequately advise Plaintiff of his right to be represented by counsel; 2) the

ALJ applied the incorrect legal standard in analyzing the opinion of Plaintiff's treating physician;

3) the ALJ failed to develop the record adequately; and 4) the ALJ's finding regarding Plaintiff's

mental residual functional capacity was not supported by substantial evidence.  See Docket # 12.

In his motion papers, the Commissioner contends that the ALJ applied an incorrect legal standard

when he failed to adequately address the medical opinion of consultative examiner, Dr. Allen, in

assessing Plaintiff's residual functional capacity and to explain what weight ought to be given to

that opinion under the Social Security regulations.  See 20 C.F.R. § 416.927(d)(1)-(6) (explaining

factors for weighing medical opinions).  Thus, the Commissioner seeks a reversal of his decision

that Plaintiff was not disabled and a remand for further administrative proceedings pursuant to

sentence four of 42 U.S.C. § 405(g), so that the ALJ can properly analyze the medical opinion

evidence of record.  <u>See</u> Docket # 16.[3]  In response, Plaintiff notes his agreement that the case should be remanded due to errors of law made by the ALJ, however, he argues that the remand should be solely for the calculation of benefits.  Docket # 20.

Because in this case there is a question as to whether the ALJ applied the correct legal standards in weighing the medical opinion evidence in the record, remand solely for the calculation of benefits would be inappropriate.  As explained by the Second Circuit, "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have [his or] her disability determination made according to correct legal principles."  <u>Schaal v. Apfel</u>, 134 F.3d 496, 504 (2d Cir. 1998) (internal quotation marks and citation omitted).  Given the ALJ's failure to address Dr. Allen's finding that Plaintiff "has a fair ability to understand, carry out and remember instructions and a fair ability to respond appropriately to supervision, co-workers and work pressures in a work setting *in a sheltered type environment*," AR 117 (emphasis added), it is unclear whether his determination that Plaintiff had the residual functional capacity to perform his past relevant work is supported by substantial evidence.  As the Commissioner points out, in assessing residual functional capacity, an ALJ must consider an individual's abilities to perform work-related

---

[3]Sentence four of § 405(g) states,

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g).

mental activities "generally required by competitive, remunerative work [which] include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting."  Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *6 (S.S.A. July 2, 1996).  Dr. Allen did not elaborate upon what he meant by "sheltered type environment,"[4] and the ALJ did not address this aspect of his opinion.  "The RFC [residual functional capacity] assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  Id. at *7.

Moreover, in weighing the medical evidence, the ALJ likewise erred by failing to address the weight that he gave to the opinion of Plaintiff's treating physician in accordance with the Social Security regulations.  With respect to the opinion of Plaintiff's treating sources, Dr. Molina and Mr. Velazquez, the ALJ's decision stated only the following:  "I adopt the assessment of Dr. Stafford [the non-examining psychological consultant].  I find that assessment is consistent with the record as a whole.  I give less weight to the statement of Mr. Velazquez and Dr. Molina that the claimant is apparently unable to work in Exhibits 2F and 5F."  AR 25.  Under the Social

---

[4]It is worth noting that the Social Security regulations, in a section cited by Plaintiff, allow for work done under special conditions to be considered substantial gainful activity.  See 20 C.F.R. § 416.973(c) ("[W]ork done under special conditions may show that you have the necessary skills and ability to work at the substantial gainful activity level."); see also Smith v. Apfel, No. 3:96CV1995, 1998 WL 893220, at *11 (D. Conn. Sept. 28, 1998) ("The regulations specifically provide that work in a sheltered environment may be considered by the Commissioner as evidence of a claimant's ability to engage in substantial gainful activity.") (citing 20 C.F.R. § 416.973(c)).  Such special conditions may include receiving special assistance from other employees in performing one's work; being allowed to work irregular hours or take frequent rest periods; and/or being allowed to be less productive or efficient than other employees.  20 C.F.R. § 416.973(c).

Security regulations, a treating physician's opinion regarding the nature and severity of a claimant's impairments will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 416.927(d)(2). If a treating physician's opinion is not given controlling weight, then various factors are applied in determining what weight to give it: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship; (iii) the extent to which the medical source provides relevant evidence to support an opinion; (iv) the extent to which the opinion is consistent with the record as a whole; (v) whether the opinion is given by a specialist; and (vi) other factors which may be brought to the attention of the ALJ. Id. at § 416.927(d)(2)(i)-(ii), (d)(3)-(d)(6). The regulations further state, "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. at § 416.927(d)(2). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing Schaal, 134 F.3d at 505). In this case, the ALJ did not give the required "good reasons" for giving less weight to the opinion of Plaintiff's treating physician.

Because the ALJ did not properly evaluate the medical opinion evidence, and because it does not appear that the evidence in this case could lead to only one conclusion, the case must be remanded for further administrative proceedings. See Schaal, 134 F.3d at 504 ("Where application of the correct legal standard could lead to only one conclusion, we need not remand. However, on this record, we cannot say with certainty what weight should be assigned . . . to the opinion of plaintiff's treating physician, or whether further clarification of the record with these

regulations in mind might alter the weighing of the evidence. It is for the SSA, and not this court, to weigh the conflicting evidence in the record.") (citations omitted).[5]

Plaintiff argues that a remand for further administrative proceedings should be denied because "the Commissioner has not indicated that there is any additional evidence that would show that plaintiff is able to engage in gainful employment, nor any explanation for failing to submit such evidence at the hearing level." Pl.'s Reply Memorandum [Docket # 20] at 4. However, that is the standard applicable to a remand sought under sentence six of § 405(g),[6] and in this case, the Commissioner seeks a remand under sentence four. Moreover, while Plaintiff laments the additional delay in the disposition of his case which would be occasioned by a remand for further administrative proceedings, "absent a finding that the claimant was actually disabled, delay alone is an insufficient basis on which to remand for benefits." Bush v. Shalala, 94 F.3d 40, 46 (2d Cir. 1996) (citation omitted).

On remand, the ALJ should re-weigh the evidence in accordance with the Social Security regulations, making clear what weight is given to each of the medical opinions in the record and, to the extent that the ALJ decides not to give controlling weight to the opinion of Plaintiff's treating physician, providing good reasons for not doing so. Insofar as Plaintiff contends that the

---

[5]Thus, the Court cannot agree with the Commissioner's assertion that the existing factual record does not establish that Plaintiff was disabled in light of the Commissioner's own statement that "the record contains conflicting evidence regarding plaintiff's mental impairment, which must be addressed on remand." Memorandum of Law in Support of the Defendant's Motion [Docket # 16] at 16-17.

[6]See 42 U.S.C. § 405(g), sentence six ("The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ...").

ALJ erred in failing to fully develop the record by failing to obtain additional medical records from his treating sources, such records may be sought on remand.[7]

## **CONCLUSION**

For the foregoing reasons I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff's motion for judgment on the pleadings (Docket # 12) should be denied, the Commissioner's motion (Docket # 16) should be granted, and the Commissioner's determination should be reversed and remanded for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).[8]

## **NOTICE**

_____Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) working days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Kenneth M. Karas at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later

---

[7]The ALJ noted in his decision that a "request for treatment records sent to New Beginnings Community Counseling Center received no response." AR 25.

[8]As a remand pursuant to sentence four, the Court's decision would constitute a final judgment, and the Clerk of the Court would be directed to close the case. See generally Shalala v. Schaefer, 509 U.S. 292, 297-99 (1993) ("a sentence-four remand order terminates the civil action seeking judicial review of the [Commissioner's] final decision") (internal quotation marks, alteration, and citation omitted).

appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Karas.

Dated: January 11, 2010
       White Plains, New York

Respectfully submitted,

Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Kenneth M. Karas, U.S.D.J.

Counsel of Record for Plaintiff and the Commissioner of Social Security